# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01085-COA

**LATISHA JOINER, AS THE ADMINISTRATRIX OF THE ESTATE OF FREDRICK PEGUES, DECEASED**                    APPELLANT

v.

**CITY OF HOLLY SPRINGS AND COLUMBUS NABORS**                    APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 05/16/2024 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON III |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIE T. ABSTON |
| ATTORNEYS FOR APPELLEES: | WILTON V. BYARS III |
| | TAMARA V. McGEE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Fredrick Pegues sued the City of Holly Springs under the Mississippi Tort Claims Act (MTCA), alleging that he fell from a ladder and suffered serious injuries because a city employee promised to hold the ladder secure but then walked away to take a phone call.[1]  The

---

[1] Pegues also named the city employee, Columbus Nabors, as a defendant.  However, under the MTCA, an employee of a governmental entity shall not "be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."  Miss. Code Ann. § 11-46-7(2) (Rev. 2019); *see Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 186 (¶25) (Miss. 2018) ("Under [the MTCA], if an employee was acting within the scope of his employment, then he cannot be individually sued. Instead, the plaintiff must sue the government employer . . . .").  For ease of reference, we refer to the named defendants collectively as "the City."

circuit court granted summary judgment in favor of the City based on two statutes, reasoning that Pegues, an independent contractor and experienced roofer, appreciated the danger that a ladder would slip and fall on a wet roof. For the reasons discussed below, we conclude that there are genuine issues of material fact and that the City is not entitled to judgment as a matter of law. Therefore, we reverse the order granting summary judgment and remand the case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. In October 2019, Fredrick Pegues was seriously injured when he fell off a ladder while inspecting the roof of the gymnasium at the W.T. Sims High School in the City of Holly Springs. Pegues was fifty-seven years old when he fell and was injured. He and his daughter owned All Around Roofing, a roofing company. The City had purchased the W.T. Sims property to preserve as a historical landmark. Columbus Nabors, a city employee assigned to oversee repairs at the school, was with Pegues when he fell.

¶3. In May 2020, Pegues sued the City under the MTCA. He alleged that Nabors had been holding and supporting the ladder until "suddenly, negligently and without warning" Nabors released the ladder and walked away to answer a call on his cell phone. Pegues alleged that Nabors's negligence caused him to fall and suffer serious injuries.

¶4. In his deposition, Pegues testified that he arrived at W.T. Sims at 8 a.m. because Nabors had called him repeatedly requesting an estimate for repairs to the gymnasium roof. Pegues testified that he told Nabors that he would wait for his crew to arrive to inspect the roof because he (Pegues) did not climb ladders. However, Nabors "push[ed]" Pegues to get

on the roof "because the Mayor wanted [an] estimate." According to Pegues, Nabors said, "I will hold the ladder for you. . . . I'm not going to let you fall." Pegues told Nabors to "make sure" to secure the ladder because Pegues did not climb ladders. Pegues testified that he and Nabors both climbed the ladder to the first-level roof without issue. Nabors then said he also needed measurements and an estimate for the second-level roof. According to Pegues, Nabors again stated that he would "hold the ladder" for Pegues, and Nabors also used a folding chair to "brace" the ladder. Pegues testified that when he neared the top of the ladder, Nabors's phone rang, and Nabors "walked away" to answer the call. According to Pegues, Nabors later admitted that "he got in a deep conversation" and "forgot that he was holding the ladder." When Nabors walked away, the ladder fell, and Pegues fell with it. According to Pegues, Nabors tried to help Pegues to his feet and did not want to call an ambulance. But Pegues insisted that Nabors call an ambulance because he could not move and knew "something was broke." Nabors then called the City's fire chief. The fire chief called 911 when he arrived, and firemen lowered Pegues from the first-level roof to the ground on a stretcher. An ambulance took Pegues to the hospital. Pegues had suffered a broken shoulder, a broken ankle, a fractured hip, and other injuries. He underwent surgery and was hospitalized for a month. Later, his injuries required additional surgeries and physical therapy and caused prolonged and significant pain and physical limitations.

¶5.    Nabors's version of the events leading up to Pegues's fall differed from Pegues's account. In his deposition, Nabors testified that Pegues was at W.T. Sims to inspect work his company had already finished, not to prepare an estimate for a new job. Nabors testified

3

that he did not talk to Pegues before he met him at the school or ask him to look at the gymnasium roof. Rather, according to Nabors, Pegues asked to look at the gymnasium roof. Nabors testified that he urged Pegues not to get on the roof because it was still wet from recent rain. Nabors also testified that he warned Pegues that he (Nabors) did not go up on the roof when it was wet because the ladder would slip. The excerpts of Nabors's deposition that are in the record do not address Pegues's claim that Nabors promised to hold the ladder but then walked away to answer a phone call.

¶6. Pegues died in June 2023, and an agreed order was entered substituting the administratrix of his estate, Latisha Joiner, as the plaintiff.

¶7. The City subsequently filed a motion for summary judgment, arguing that Joiner's claims were barred by Mississippi Code Annotated section 11-1-66 (Rev. 2019) and Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2019). Following a hearing, the circuit court granted the City's motion for summary judgment on both grounds. Joiner filed a motion for reconsideration, which was denied, and a notice of appeal.

## ANALYSIS

¶8. We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The non-moving party "may not rest upon

4

the mere allegations or denials of his pleadings," but must respond with competent evidence of "specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "The movant bears the burden of *persuading* the [court] that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). The non-moving party "should be given the benefit of every reasonable doubt," and "[i]n any case where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits." *Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017) (brackets and quotation marks omitted). "Summary judgment should only be granted when the moving party has met its burden by demonstrating that no genuine issues of material fact exist." *United Emergency Servs. of Miss. Inc. v. Miller ex rel. Reed*, 414 So. 3d 66, 71 (¶9) (Miss. 2025) (quotation mark omitted). On a motion for summary judgment, the court does not try issues of fact but only determines whether there are genuine issues of material fact to be tried. *Est. of Biddle v. Biddle*, 369 So. 3d 525, 529 (¶13) (Miss. 2023) (citing *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983)).

I.     **Mississippi Code Annotated section 11-1-66**

¶9.     The MTCA provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [w]hich is limited or barred by the provisions of any other law." Miss. Code Ann. § 11-46-9(1)(f). Mississippi Code Annotated section 11-1-66 provides that no property owner "shall be liable

5

for the death or injury of an independent contractor or the independent contractor's employees *resulting from dangers of which the contractor knew or reasonably should have known*." (Emphasis added). This statute, which became effective January 1, 2003, codifies preexisting Mississippi common law. *See Jordan v. Chevron U.S.A. Inc.*, Civil Action No. H-18-3496, 2019 WL 568542, at *3 & n.2 (S.D. Tex. Feb. 12, 2019); 6 Jeffrey Jackson et al., *Encyclopedia of Mississippi Law* § 52:10.30 (Supp. 2024-25).

¶10.    The City argues that Joiner's claim is barred under section 11-1-66 because Pegues was an independent contractor and experienced roofer who knew or reasonably should have known of the danger that a ladder may slip on a wet roof, particularly when braced by a folding chair. However, the City's argument fails to acknowledge that Joiner's claim is not simply that the City provided Pegues with a ladder that slipped on a wet roof. Rather, the complaint specifically alleges that Pegues was injured because Nabors "suddenly, negligently and without warning" released and stopped supporting the ladder to answer a phone call. The complaint further alleges that Pegues fell because of Nabors's decision to release the ladder and failure to secure it. Pegues's testimony supports this allegation. Pegues testified that Nabors repeatedly assured him that he would hold the ladder secure, but Nabors became distracted by a phone call, walked away from the ladder, and allowed the ladder to fall.

¶11.    In *Nelson v. Sanderson Farms Inc.*, 969 So. 2d 45 (Miss. Ct. App. 2006), an independent contractor had been hired to repair a large basin at a Sanderson Farms processing facility. *Id.* at 47 (¶2). Nelson, an employee of the independent contractor, was injured when, during a break, he "placed his hand on top of the basin wall," and a rotating

6

"bridge" on the basin wall "rolled over his fingers." *Id.* at 49 (¶5). Nelson believed that the rotating bridge had been turned off during the work, and he alleged that Sanderson Farms negligently restarted the bridge without warning. *Id.* at 49, 51 (¶¶5, 12). Sanderson Farms argued that Nelson's claim was barred because Nelson appreciated "the potential danger posed by the bridge," and the circuit court granted summary judgment on that basis. *Id.* at 51 (¶12). However, this Court reversed, holding that there were genuine issues of material fact for trial. *Id.* at 52 (¶15). We acknowledged there was "ample" evidence that "Nelson appreciated the potential danger created by the bridge's rotation"; indeed, Nelson did not even dispute that point. *Id.* at 51-52 (¶14). However, we reasoned that

> [i]f the bridge was halted while [Nelson's] crew was working, . . . the danger created by the bridge was also halted, and Sanderson Farms' duty to warn would be renewed if [it] restarted [the bridge], as at that point in time the bridge's movement would have been an unknown danger. Therefore, a genuine issue of material fact exists as to whether the bridge was shut down and restarted unbeknownst to Nelson and whether or not a de-energized bridge, under the circumstances present, represented a hidden danger about which Sanderson Farms had a duty to warn before re-energizing. These issues are properly jury issues.

*Id.* at 52 (¶15).

¶12. Joiner's claim in the present case is analogous. Pegues, as an independent contractor and experienced roofer, appreciated or reasonably should have appreciated the danger of a ladder slipping on a wet roof. But that is not the basis of Joiner's claim. Pegues testified that Nabors repeatedly assured him that he would hold the ladder secure while Pegues was on it. Pegues further alleged and testified that Nabors released the ladder suddenly and without warning and walked away, causing the ladder and Pegues to fall. The alleged cause of

7

Pegues's injuries was not the typical or general danger that a ladder may slip on a wet roof; rather, Pegues claimed that he was injured because of Nabors's simple negligence in failing to hold the ladder after he had expressly and repeatedly promised to do so.[2] Pegues had no reason to appreciate or anticipate the risk that Nabors would do the opposite of what he promised and suddenly release and walk away from the ladder. Section 11-1-66 does not shield the City from liability for such simple acts of negligence by its employees. Accordingly, the City was not entitled to summary judgment based on section 11-1-66.

## II. Mississippi Code Annotated section 11-46-9(1)(v)

¶13. The MTCA also provides that

> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care . . . .

Miss. Code Ann. § 11-46-9(1)(v). Applying this provision, this Court has emphasized that "the fact that an alleged dangerous condition is open and obvious only shields liability for *failure to warn of the condition*." *Long v. Jones County*, 301 So. 3d 62, 67 (¶19) (Miss. Ct. App. 2020) (citing *Calonkey v. Amory Sch. Dist.*, 163 So. 3d 940, 943 (¶¶13-14) (Miss. Ct. App. 2014)). "[T]he fact that a dangerous condition is [open and] obvious" "does *not* exempt

---

[2] "A duty can be assumed . . . by a gratuitous promise that induces detrimental reliance." *Doe v. Hunter Oaks Apartments L.P.*, 105 So. 3d 422, 427 (¶20) (Miss. Ct. App. 2013).

[a governmental entity] from liability for causing the dangerous condition through the negligent or willful actions of its employees." *Calonkey*, 163 So. 3d at 943 (¶14) (emphasis added); *accord Long*, 301 So. 3d at 67 (¶20); *Campbell v. Harrison Cnty. Bd. of Supervisors*, 269 So. 3d 1269, 1273-74 (¶15) (Miss. Ct. App. 2018). This is consistent with common-law premises liability applicable to non-governmental entities. *Campbell*, 269 So. 3d at 1273 n.5.

¶14. The circuit court ruled that section 11-46-9(1)(v) barred Joiner's claim because it was undisputed that Pegues knew that the roof was wet and that Nabors had used a folding chair to "brace the ladder on the wet roof." The court reasoned that these conditions were "open and obvious to one exercising due care" and that Joiner's claim was barred as a result.

¶15. However, we conclude that the City is not entitled to summary judgment based on section 11-46-9(1)(v). To begin with, Joiner's claim is not really a premises liability claim about a "condition on [the City's] property." Miss. Code Ann. § 11-46-9(1)(v). Rather, to reiterate, the complaint alleges, and Pegues testified, that Pegues fell and was injured because Nabors promised to secure the ladder and then suddenly and negligently released and walked away from the ladder. That is not a traditional premises liability claim but a "garden-variety negligence" claim that Pegues was injured because Nabors negligently released and failed to secure the ladder after promising to do so.[3] Moreover, even if we were to accept the City's

---

[3] A discussion of this point from a concurring opinion in an unpublished Nevada case is too on-point not to borrow:

> Here, [Joiner] doesn't contend that [Pegues] was injured by some hazard that existed on the property that [the City], as the landowner, should have either fixed or warned him to avoid. Rather, he contends that [Nabors] neglected to act as a "reasonable person" when he affirmatively agreed to hold the ladder steady but then failed to do so. This isn't a premises liability case, it's just a

9

premises that the claim arises out of a "condition on [city] property" and that the condition was open and "obvious," Miss. Code Ann. § 11-46-9(1)(v), this statute "does *not* exempt [the City] from liability for causing the dangerous condition through the negligent or willful actions of its employees." *Calonkey*, 163 So. 3d at 943 (¶14) (emphasis added). Therefore, the statute would not bar Joiner's claim that Nabors's negligence created the danger that caused Pegues's injuries. For these reasons, the City is not entitled to judgment as a matter of law based on section 11-46-9(1)(v) either.

## CONCLUSION

¶16. The City was not entitled to judgment as a matter of law based on either of the grounds raised below. Accordingly, we reverse the circuit court's order granting summary judgment and remand the case for further proceedings consistent with this opinion.

¶17. **REVERSED AND REMANDED.**

 **BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

---

  garden-variety negligence case alleging that [Nabors] failed to act in the way that a reasonable person would have under the circumstances. [Nabors] himself was the person who performed the acts in question, and he either acted negligently or he didn't . . . .

*Koch v. Elliott*, No. 70882, 2017 WL 6547442, at *3 (Nev. Ct. App. Dec. 15, 2017) (Tao, J., concurring).