**Antoinette FAZIO, Appellant,**

v.

**FEGLEY OIL COMPANY, INC. and Fegley's Mini–Mart, Inc. and Harwood Gas and Oil Company c/o Fegley Oil Company, Inc. and Borough of McAdoo and D & M Real Estate, a Pennsylvania partnership.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 1998.
Decided June 26, 1998.

Gerard J. Jackson, Cherry Hill, for appellant.

Joseph M. DeMarco, Media, for appellees.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Antoinette Fazio appeals from an order of the Court of Common Pleas of Schuylkill County granting the motion for summary judgment filed on behalf of Fegley's Mini–Mart, Inc., Harwood Gas and Oil Company and D & M Real Estate (collectively, the Defendants).

On January 23, 1996, Fazio instituted the present action against the Defendants and the Borough of McAdoo by filing a complaint in which she alleged that, on March 9, 1993, she sustained injuries in the nature of fractures to her right leg and ankle when she slipped and fell in a public alleyway located in the Borough which was adjacent to a "mini-mart" which was "operated, possessed and maintained" by the Defendants. (Fazio's First Amended Complaint at 3–4; Reproduced Record (R.R.) at 10a–11a.) Specifically, Fazio alleged that the Defendants are liable for her injuries because the contours of their land were at such an angle as to promote unnecessary and unreasonable artificial runoff of water onto the public alleyway, thus negligently creating a risk of harm to the walking public by the freezing and refreezing of such waters on the public way. There is no disagreement that the alleyway was a public thoroughfare.

The Borough filed a motion for summary judgment, and, while that motion was pending, a settlement was apparently reached between Fazio and the Borough. Subsequently, on March 24, 1997, the Defendants also filed a motion for summary judgment, which was granted by the trial court by opinion and order dated May 27, 1997.

In granting the Defendants' motion for summary judgment, the trial court reasoned as follows:

> In disposing of the Motion for Summary Judgment, we rely upon the holding and rationale of the Superior Court in *LaForm v. Bethlehem Township*, [346 Pa.Super. 512, 499 A.2d 1373 (1985).] In that case, it was held that "liability under Section 368 [of the *Restatement (Second) of Torts* ] for creating a dangerous water runoff condition on a public highway must be preceded by some actionable negligence on the part of the landowner." ... A landowner is liable for the effects of surface water running off his property only where he has A) diverted the water from its natural channel by artificial means, or B) unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor.... "Where water flows onto a highway naturally, or as a result of ... normal development in a city ... Section 368 is inapplicable against the upper landowner."....
>
> We find that Section 368 does not apply in this case. The Plaintiff has produced no evidence to show that there was any actionable negligence on the part of any of the Defendants. She has pointed to no facts or record establishing that the slope of the mini-mart property differs from the natural channel of water flow in the [B]orough of McAdoo or that the Defendants did anything to increase the quantity of water otherwise flowing over the property. The exhibits relied upon by the Plaintiff establish nothing other than that water flows onto the alleyway as a result of normal development in the borough. In the absence of any additional evidence, we are constrained to conclude that [the Defendants] are entitled to judgement as a matter of law.

(Trial Court Opinion at 3–4.) (Citations omitted.) (Footnote omitted.) The trial

court also noted in a footnote that "the Plaintiff has not pointed to any facts which would establish that either Fegley Oil Company, Inc. or Harwood Gas and Oil Company are related in any way to the ownership or operation of the subject mini-mart. It is for that reason that those two defendants are entitled to judgement as a matter of law." (Trial Court Opinion at 3.) The instant appeal by Fazio ensued.[1]

Pennsylvania Rule of Civil Procedure 1035.2 provides when summary judgment may be entered in favor of a litigant:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> **(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.**

Pa. R.C.P. No. 1035.2 (emphasis added).

It is well settled that, in order to maintain a negligence cause of action, the plaintiff must establish: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damages to the interests of another. *Colston v. Southeastern Pennsylvania Transportation Authority,* 679 A.2d 299 (Pa.Cmwlth.1996).

■ Fazio's cause of action in negligence in the instant appeal is principally based upon her contention that the Defendants negligently caused or allowed water to accumulate in an adjacent alleyway which subsequently turned into a dangerous icy condition, which was the cause of Fazio's fall resulting in her personal injuries. Therefore, it is important to discuss at the outset the specific common law principles and limitations governing the duty and liability of a landowner with respect to surface water running over his or her property, including the "common enemy" doctrine which has a limited application in this Commonwealth and applies in urban settings, as in the case before us. In this regard, we find the decision of the Superior Court in *LaForm,* and the principles enunciated therein, to be instructive:

> The law regards surface waters as a common enemy which every proprietor must fight to get rid of as best he may....
>
> "Under the so-called 'common-law' or 'common-enemy rule,' not only is an owner of higher land under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other, but he can, at least in the development of urban property, improve his land by regrading it or erecting buildings thereon, without legal responsibility for any consequent diversion of surface waters from his property to that of adjoining owners, it being recognized that changes or alterations in the surface may be essential to the enjoyment of his property."
>
> . . . . .
>
> "The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another, ... He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the lower land:.... From those rules it is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury." ...

---

1. Our standard of review on appeal from a trial court's order granting summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Davis v. Brennan,* 698 A.2d 1382 (Pa.Cmwlth. 1997).

This is not a case of artificial diversion of surface waters. It is clear that the water flooding the intersection of William Penn and Santee roads ran there as a result of natural descent through the watershed. Nearly all the rainwater that fell in Bethlehem and flowed to the intersection would eventually have arrived there at some point even if the land upstream had been left in its natural condition.

Thus, we need consider only whether the City caused an unreasonable or unnecessary increase in the water flowing through its drainage swale....

No doubt a landowner may be liable for unreasonably or unnecessarily increasing the rate or force alone at which he precipitates surface water upon lower land.... However, we conclude that the evidence in this case was wholly insufficient to establish that the City of Bethlehem did anything to unreasonably or unnecessarily increase the rate at which surface water was discharged into Bethlehem Township.

*LaForm,* 499 A.2d at 1378–79 (citations omitted). Thus, the clear import of the *LaForm* decision is that, under common law principles, a landowner in urban areas [2] is liable for the effects of surface water running off of his or her property only where he either a) diverted the water from its natural channel by artificial means, or b) unreasonably or unnecessarily increased the quantity or changed the quality of water discharged from his property. In the instant appeal however, as the trial court found, no evidence of record indicated that the Defendants had either diverted the water from its natural channel or increased the quantity of water discharged into the alleyway.

Fazio argues that the *LaForm* decision is inapplicable to this appeal because that case dealt only with a municipal tortfeasor, whereas in the instant case only non-municipal tortfeasors are involved. However, we reject this proposition because, as noted above, the principle of law articulated in *LaForm* with regard to a landowner's liability for surface

waters was based in large part upon the common law "common-enemy rule," a doctrine applicable to cases in which non-municipal parties are named as defendants. *E.g., Chamberlin.*

■ In addition to the legal principles governing a landowner's liability with respect to surface waters flowing across his property, Fazio argues that the trial court erred in granting summary judgment because Fazio's claim "falls within" Section 368 of the Restatement (Second) of Torts, which provides as follows:

### Conditions Dangerous to Travelers on Adjacent Highway

A possessor of land who creates or permits to remain thereon an excavation or other **artificial** condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who ˙

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

*Restatement (Second) of Torts* § 368 (1965) (emphasis added). In support of this argument, Fazio refers us to the testimony of her expert who opined that the grade of the Defendants' property "was a causal factor in causing storm water runoff onto the alleyway to be deposited into the alley where [Fazio] fell." (Fazio's Brief at 7.) Fazio then concludes that "Negligence was thus established on the theory that the [Defendants'] property was contoured in such a way as to permit a runoff of storm water from melted snow and ice to flow therefrom onto the adjoining alleyway." *Id.*

This argument, however, is without merit because, pursuant to Section 368 of the Restatement, the dangerous condition for which an adjoining landowner may be held liable

---

2. The "common enemy" doctrine, which applies to surface water in highly developed urban areas, does not apply to rural areas. *See Chamberlin v. Ciaffoni,* 373 Pa. 430, 96 A.2d 140 (1953); *Alburger v. Philadelphia Electric Company,* 112 Pa.

Cmwlth. 441, 535 A.2d 729, 737 (1988) (Doyle, J., dissenting) ("The common enemy rule has only limited application in Pennsylvania, and only in an urban setting.").

must be an **artificial** condition created by the landowner and not merely the natural contour of the land, albeit the contour of the land is now covered by macadam. As the trial court found, Fazio failed to point to any evidence which would indicate that the grade of the property was artificial, that it differed from the natural channel of water flow within the Borough, or that the Defendants did anything to increase the quantity of water otherwise flowing into the alleyway.[3]

◼ Although Fazio strongly implies in her brief that a landowner's duty with respect to travelers on an adjacent alleyway or public roadway is the same as the duty owed with respect to travelers on an adjacent *sidewalk*, this proposition is clearly erroneous, as no comparable duty exists with respect to a public roadway. *See Allen v. Mellinger*, 156 Pa.Cmwlth. 113, 625 A.2d 1326 (1993), *petition for allowance of appeal denied*, 537 Pa. 653, 644 A.2d 738 (1994). Any analogous duty owed to travelers in this respect is that of the municipal or governmental entity who possesses the public right of way, *id.*, in this case the Borough, whose interests are not now before this Court.

We further note that, throughout her brief, Fazio also erroneously implies that Defendants owed a duty to her similar to that which a property owner owes to reasonably foreseeable travelers **on his or her own property**. However, as the Defendants point out in their brief, Fazio never alleged in her complaint, amended complaint, or in her response to the Defendants' motion for summary judgment, and nothing in the present record indicates, that the Defendants had any ownership or other proprietary interest in the alleyway, or that the Defendants con-

sequently owed to Fazio any heightened duty of care comparable to that of a licensee or business invitee.

Because Fazio failed to produce sufficient facts indicating that the Defendants diverted the water from its natural channel by artificial means, that they unreasonably or unnecessarily increased the quantity of water discharged into the alleyway, or that the Defendants created any artificial condition that created an unreasonable risk to those traveling in the alleyway, in accordance with Pa. R.C.P. No. 1035.2(b), we affirm the order of the trial court granting summary judgment in their favor.

### ORDER

**NOW,** June 26, 1998, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is hereby affirmed.

---

**3.** Moreover, we note that Section 349 of the Restatement (Second) of Torts, which was cited by this Court in *Allen v. Mellinger*, 156 Pa. Cmwlth. 113, 625 A.2d 1326 (1993), *petition for allowance of appeal denied*, 537 Pa. 653, 644 A.2d 738 (1994), and the Superior Court in *Cruet v. Certain–Teed Corp.*, 432 Pa.Super. 554, 639 A.2d 478 (1994), *petition for allowance of appeal denied*, 541 Pa. 639, 663 A.2d 691 (1995), provides as follows:

**Dangerous Conditions in Public Highway or Private Right of Way**

A possessor of land over which there is a public highway or private right of way is **not**

subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care

(a) to maintain the highway or way in safe condition for their use, or

(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

*Restatement (Second) of Torts* § 349 (1965) (emphasis added).