## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00300-SCT

*HEATHER J. MARTIN;*

*ANNETTE McKAY MARTIN,*

*MOTHER AND REPRESENTATIVE*

*OF THE HEIRS AT LAW OF LISA MAY;*

*JUDY SMITH, MOTHER AND COURT*

*APPOINTED CONSERVATOR OF THE*

*PERSON AND ESTATE OF WILLIAM*

*GREG SMITH; MAMIE IVY, MOTHER*

*AND REPRESENTATIVE OF THE HEIRS*

*AT LAW OF CALANDRA C. IVY, DECEASED;*

*DELMONTEZ MAGEE; PAMELA LOUISE HARRIS;*

*LORIE LEE ARMSTRONG; ANNIE STEVENS,*

*MOTHER AND REPRESENTATIVE OF THE*

*HEIRS AT LAW OF YUSEF McKINLEY, DECEASED;*

*FRANKIE M. HUGHES, MOTHER AND*

*REPRESENTATIVE OF THE HEIRS AT LAW*

*OF CHRIS HUGHES, DECEASED; AND*

*WILLIE PAUL DIXON, FATHER AND*

*REPRESENTATIVE OF THE HEIRS AT LAW*

*OF MARCUS DIXON, DECEASED*

*v.*

*DR. SUSAN FLANAGAN, ADMINISTRATRIX OF THE*

*ESTATE OF MARY R. VANDERBECK, DECEASED;*

*SCRUGGS FARMS, A JOINT VENTURE;*

*AND SCRUGGS FARMS AND SUPPLIES, LLC*


| | |
|---|---|
| DATE OF JUDGMENT: | 1/30/2001 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JEFFREY DEAN LEATHERS |
| | RONALD D. MICHAEL |
| | MICHAEL D. GREER |
| ATTORNEYS FOR APPELLEES: | GREGORY M. HUNSUCKER |
| | WILLIAM M. BEASLEY |
| | CHARLES G. COPELAND |
| | REBECCA S. JORDAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED -05/23/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/13/2002 |


**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**


¶1. Heather J. Martin, Annette McKay Martin, Judy Smith, Mamie Ivey, Calandra C. Ivey Delmontez Magee, Pamela Louise Harrris, Lorie Lee Armstrong, Annie Stevens, Frankie M. Huges and Willie Paul Dixon ("Martin") filed suit in the Circuit Court of Lee County for the death of three individuals and serious injuries to five others as a result of an automobile accident on an icy road in Lee County on January 12, 1996.[1] After filing an answer and conducting extensive discovery, the Estate of Mary R. Vanderbeck, Scruggs Farms and Scruggs Farms and Supplies, LLC, filed separate motions for summary judgment, which were later granted. The circuit court made two findings: (1) "As long as owners of unimproved

property do not perform an affirmative act altering the natural flow of water, they do not in Mississippi have an affirmative duty in tort to prevent surface water from flowing across their property onto a roadway" and; (2) Martin had "presented no credible evidence . . . that the defendants created an artificial condition on the property."

¶2. On appeal, Martin contends that the use of the land by Estate of Vanderbeck and Scruggs Farms created artificial conditions which caused unreasonable water run-off. We find that Martin's arguments are without merit and affirm the grant of summary judgment to the Estate and Scruggs Farms.

## FACTS

¶3. The alleged proximate cause of the accident in question was the accumulation of water on a public road. The water allegedly ran off from the defendants' property and subsequently froze, creating a hazard on the public road. The circuit court ruled that Martin had failed to prove legal causation and to create a genuine issue of material fact.

¶4. The property adjacent to the ice formation was owned by the Estate. The property had been leased by Scruggs Farms for several years. The lease does not specify that any duties were imposed on either party and does not contain a legal description of the leased land.

¶5. Martin offered evidence which showed the existence of three or more field roads that extended from the property side of the culvert and up a hill. Martin also filed the affidavit of Richard Forbes, a licensed professional mechanical engineer, who stated that excessive wear and erosion of these field roads created ruts in the field roads. These ruts captured surface water from the property and channeled it downhill toward Coley Road. The water then flowed over the culvert and spilled over onto Coley Road. The point of Coley Road immediately adjacent to the culvert was the only area in the immediate vicinity where ice formed.

¶6. It is uncontested that none of the land, including the land on the hill or hillside, adjacent to Coley Road was in cultivation. Mitchell Scruggs testified during a deposition that Scruggs Farms' equipment accessed fields located on the land by turning off Coley Road and crossing a culvert. Scruggs rarely used the ingress/egress over the culvert, and when it was used, the tractors turned immediately left and drove drive north, parallel to Coley Road, and not up the hill. The record does not show that Scruggs cleared, graded, or made new water channels on the land. There is no proof that the natural contours of the land had been altered.

## DISCUSSION

¶7. A trial court's decision to grant summary judgment is reviewed de novo. ***Hartford Ins. Co. v. Sheffield***, 808 So.2d 891, 894 (Miss. 2001); ***Hernandez v. Vickery Chevrolet-Oldsmobile Co.***, 652 So. 2d 179, 181 (Miss. 1995). Entry of summary judgment is appropriate when there exists no genuine issue of material fact that can be found and the moving party is entitled to judgment as a matter of law. ***Hartford Ins. Co. v. Sheffield,*** 808 So.2d at 894; ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983). The burden of demonstrating that no genuine issue of fact exists is on the moving party, viewing all evidence in the light most favorable to the non-moving party. ***Hartford Ins. Co. v. Sheffield***, 808 So.2d at 894; ***Cook v. Children's Med. Group, P.A.***, 756 So. 2d 734, 739 (Miss. 1999).

## I. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT THE PROPERTY

**WAS UNIMPROVED.**

**II. WHETHER THE LOWER COURT ERRED BY FINDING THAT THE DEFENDANTS DID NOT PERFORM AN AFFIRMATIVE ACT WHICH CREATED THE DANGEROUS CONDITION.**

**III. WHETHER THE DEFENDANTS HAD A DUTY TO EXERCISE REASONABLE CARE IN PREVENTING THE CREATION OF A DANGEROUS CONDITION.**

¶8. To "improve" land means to "develop" land. Black's Law Dictionary 761 (7th ed. 1999). Land may be considered to be "improved" even though the value of the land has not been enhanced by the improvement. *Id.*

¶9. An owner of land which is situated over other lands ("the upper landowner") is liable for water which flows onto land which lies underneath the incline when he has, by artificial means, discharged the water in a manner that unreasonably damages the lower landowner. *Hall v. Wood*, 443 So. 2d 834, 839 (Miss. 1983).

¶10. The duties of upper landowners are set out in *Hall*, as follows:

> Where the flow of waters has been rendered by the operation of the laws of physics upon the natural contours of the land, a lower landowner has no rights against his upper neighbor for damages thus caused. Certainly upper landowners may use well established watercourses through lower lands to drain upper properties. On the other hand, an upper landowner may not unreasonably alter natural drainage patterns to the detriment of his lower neighbor.

*Id.* (citations omitted).

¶11. *Hall* goes on to state that an upper landowner may use his lands in a reasonable manner, even if, as a result of this use, the waters harm lower landowners. *Id.* However, the use of the land cannot be unreasonable. *See, e.g.*, *Homes, Inc. v. Anderson*, 235 So. 2d 680, 682 (Miss. 1970); *Lauck v. Gilbert*, 252 Miss. 371, 173 So. 2d 626 (1965); *American Sand & Gravel Co. v. Rushing*, 183 Miss. 496, 502, 184 So. 60 (1938); *Bd. of Drainage Comm'rs v. Bd. of Drainage Comm'rs,* 130 Miss. 764, 95 So. 75 (1923).

¶12. As set out in *Hall*, it is impossible for an upper landowner to retain all water that comes upon property:

> The owner of unimproved upper lands may allow diffused surface waters to drain from his lands unimpeded in their natural state even though lower landowners are affected. To require an upper landowner to retain all waters coming onto his property from all sources, especially rainfall, would (a) be to require an impossibility and (b) impose an intolerable burden on the owners of upper lands in every water shed.

443 So. 2d at 839.

¶13. In the absence of proof of an affirmative act creating an artificial condition, the upper landowner cannot be liable for the damage allegedly caused by the diffusion of surface waters. *Id.*; *see also Fazio v.*

***Fegley Oil Co.,*** 714 A.2d 510, 514 (Pa. Commw. Ct. 1998), *appeal denied*, 734 A.2d 863 (Pa. 1999); Restatement (Second) of Torts § 368 (1965). In ***Hall***, the Court held that an upper landowner who stripped his land should reasonably have known his actions would result in erosion which in turn would result in substantial silting, sedimentation, and general pollution of lake, and that the lower landowners were entitled to injunctive relief against him. 443 So. 2d at 840. In ***Fazio***, the Pennsylvania court defined an artificial condition, for which an upper landowner might be liable, as one where the grade of the property was artificial, where the flow of water differed from the natural channel of water flow, or where the upper landowner did something to increase the quantity of the water flow. 714 A.2d at 513-14.

¶14. Martin argues that the Scruggs' use of the field roads and of the culvert for ingress and egress constituted an artificial condition, and that the use of the field roads constituted an affirmative act, thus making the defendants liable for the dangerous condition on the road. Scruggs responds that no affirmative act was performed and that there is no basis for liability. Vanderbeck contends that summary judgment was proper because the Estate had no duty to travelers on the road.

¶15. Martin cites and relies on ***Maucieri v. Ware***, 30 N.Y.S.2d 672, 673 (N.Y. App. Div. 1941). In that case, a pedestrian brought suit for injuries received from a fall onto an icy sidewalk abutting the defendant's land. The plaintiff alleged that this fall was caused by the icy accumulation of water discharged by the defendant's driveway. On appeal, the court found that there was evidence sufficient for a jury to conclude that the driveway changed the natural contours of the land and caused surface waters to concentrate and discharge on the sidewalk. This ruling appears to be in conflict with Mississippi law, which requires the upper landowner's use to be unreasonable.

¶16. Scruggs cites ***LaForm v. Bethlehem Township***, 499 A.2d 1373, 1378 (Pa. Super. Ct. 1985), for the rule that "an upper landowner is liable for the effects of surface water running off his property only when he has (1) diverted the water from its natural channel by artificial means or (2) unreasonably or unnecessarily increased the quantity (or changed the quality of water discharged." ***Id.*** In ***Fazio,*** the ***LaForm*** rule was adopted, holding that proof of a single identifiable act or a dramatic change in the landscape caused by the upper landowner is required. 714 A.2d at 513. Fazio alleged that the defendants were liable for injuries she incurred when she slipped on ice. Water from an artificial condition created by a mini-mart had accumulated on a public thoroughfare. The court held that the artificial condition caused unnecessary and unreasonable water runoff which resulted in a risk of harm to the public when the water froze. 714 A.2d at 514. *See also* ***LaForm,*** 499 A.2d at 1378.

¶17. The Restatement (Second) of Torts § 368, "Conditions Dangerous to Travelers on Adjacent Highway, " provides as follows:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidently brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who:
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel.

Also instructive is Restatement (Second) of Torts § 349, which defines the duties of landowners to maintain

highways or warn motorists of dangerous conditions on the highway.

> A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care (a) to maintain the highway or way in safe condition for their use, or (b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

¶18. Mississippi follows the rationale of *LaForm* and *Fazio*, requiring an unreasonable affirmative act on the part of the landowner for liability to result. No genuine issue of material fact exists that the use of the land by Scruggs and/or the Estate was unreasonable.

¶19. These issues are without merit.

## CONCLUSION

¶20. For the reasons stated above, the Lee County Circuit Court's grant of summary judgment to the Vanderbeck Estate, Scruggs Farms and Scruggs Farms and Supplies is affirmed.

¶21. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., COBB, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND EASLEY, J.**

> **DIAZ, JUSTICE, DISSENTING:**

¶22. Because I would find that the trial court erred in granting summary judgment, I respectfully dissent.

¶23. As related by the majority, this Court laid out the duties of landowners to their fellow landowners in *Hall v. Wood*, 443 So.2d 834 (Miss. 1983),

> [W]e hold that upper landowners such as Hall are entitled to make reasonable use of their land. Where there is a reasonable likelihood of damage to the property of lower landowners, however, upper landowners are required to do whatever is reasonable to minimize the damage. The fact that some damage nevertheless occurs to the lower landowners does not render the upper landowner liable. On the other hand, where the upper landowner has done nothing in an effort to ameliorate the adverse effect on lower landowners and where the damage is in fact substantial, and further where the development activities of the upper landowner are a major proximate cause of that damage, the lower landowners are entitled to damages and/or injunctive relief as may be appropriate.

*Id.* at 839.

¶24. Furthermore, in *Mizell v. Cauthen*, 251 Miss. 418, 426, 169 So.2d 814, 816 (1964), this Court likewise found that a defendant landowner was under the "duty of using reasonable care to prevent his property, which abutted the public way, from becoming a source of danger to the persons using the same." *Id*.

¶25. The majority narrows this duty of reasonable care by relying on a case from a foreign jurisdiction,

*Fazio v. Fegley Oil Co.*, 714 A.2d 510, 514 (Pa. Commw. Ct. 1998)(holding that an unreasonable affirmative act is required on the part of the landowner to create liability). I, however, believe that based on *Hall*, *Mizell*, and the Restatement (Second) of Torts §§ 349 & 368 (1965), landowners such as the defendants in the case at bar are simply required to use reasonable care in creating or maintaining roadways on their property. Nevertheless, I conclude that a question of fact exists in this case no matter which interpretation of the law is applied.

¶26. Under both interpretations, the creation and maintenance of a man-made roadway is an "affirmative act" which is subject to an analysis of whether that act or actions were reasonable. Here, there is evidence to show that the water run-off from defendants' field roads created a dangerous condition on Coley Road. An engineer, Richard Forbes, stated the following in his affidavit:

> 4. In my opinion, the cause of the accident was surface water which drained down from adjoining landowners with a higher elevation down field roads and certain ruts in their property which flowed directly across the top of an existing culvert and across both lanes of traffic of Coley Road.
>
> 5. At the time this water was flowing across the highway, the temperature dropped below freezing and caused a large ice spot to form.
>
> 6. In my opinion the ice spot would not have occurred but for the artificial, man-made condition which caused the water to flow onto Coley Road.

¶27. Furthermore, Robert B. Coley, who is very familiar with Coley Road, stated in his affidavit that he was aware of water run-off freezing on Coley Road "dozens of times."

¶28. As stated by the majority, the burden of demonstrating that no genuine issue of material fact exists is on the moving party, viewing all evidence in the light most favorable to the non-moving party. *Hartford Ins. Co. v. Sheffield,* 808 So. 2d 891, 894 (Miss. 2001); *Cook v. Children's Med. Group, P.A.*, 756 So.2d 734, 739 (Miss. 1999). Here, I believe a genuine issue of material fact exists as to whether the defendants did exercise reasonable care. Thus, summary judgment was inappropriate.

**McRAE, P.J., AND EASLEY, J., JOIN THIS OPINION.**

1. We have previously reviewed Martin's wrongful death claims against the City of Tupelo in *Martin v. City of Tupelo*, 747 So. 2d 822 (Miss. 1999).