# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01277-COA

SHEILA GAYDEN McGEE, INDIVIDUALLY
AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF TONY JAMES JR.

APPELLANT

v.

NEEL SCHAFFER ENGINEERS AND
PLANNERS INC., PIKE COUNTY, MISSISSIPPI,
AND CHAD TOLES

APPELLEES

DATE OF JUDGMENT:          11/25/2020
TRIAL JUDGE:               HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED: PIKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   WILBUR O. COLOM
                           CHARLES TYRONE BRANT
ATTORNEYS FOR APPELLEES:   JUDSON ROY JONES
                           WILLIAM ROBERT ALLEN
                           MICHAEL T. JAQUES
                           DAVID WESLEY MOCKBEE
                           KATELYN ADELE RILEY
NATURE OF THE CASE:        CIVIL - WRONGFUL DEATH
DISPOSITION:               AFFIRMED IN PART; APPEAL DISMISSED
                           IN PART - 03/29/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Sheila Gayden McGee and the other heirs of Tony James Jr. (collectively referred to as "McGee") appeal from the Pike County Circuit Court's orders granting summary judgment and the final judgments as to Neel Schaffer Engineers and Planners Inc. ("Neel Schaffer"), Chad Toles ("Toles"), and Pike County, Mississippi ("Pike County") in McGee's

lawsuit for damages from the wrongful death of James. Neel Schaffer and Toles individually filed motions to dismiss the appeal against them as untimely. Finding merit in the motions, we dismiss McGee's appeal from the final judgments in favor of Neel Schaffer and Toles, individually. Concerning McGee's appeal of the grant of summary judgment and final judgment in favor of Pike County and Toles, in his official capacity as county engineer, we affirm the circuit court's ruling that both parties were immune under the "dangerous condition" provision of the Mississippi Tort Claims Act ("MTCA"), Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2019).

**Facts**

¶2. To receive State-aid funds for road improvements, a board of supervisors is required under Mississippi Code Annotated section 65-9-13(b) (Rev. 2021) to employ a county engineer. Pike County had previously engaged Neel Schaffer as an engineering consulting firm, and Pike County selected Toles, one of Neel Schaffer's engineers, to serve as its State Aid County Engineer. An order of the board of supervisors approving this appointment was entered on September 28, 2012, and Toles and the board president signed a contract that same day. The State's rules and regulations setting out the requirements for engineering services were attached to the contract.

¶3. In 2016, Pike County identified a proposed State Aid Road Project to reinforce a

concrete-box culvert.[1]  If the project qualified for funds, Toles, as Pike County's State Aid Engineer, would furnish all construction engineering and inspection services on the project.  He would ultimately get paid up to twelve percent of the final construction cost.  As the evidence would later show, however, this payment was not made to Toles personally, but to his employer Neel Schaffer, who invoiced Pike County for Toles's work.

¶4.    When the project was approved for the State funds, Toles prepared the specifications for bids.  At the close of the bidding process, MAGCO Inc. ("MAGCO") was awarded the contract on February 15, 2017.  All work on the project needed to be performed in accordance with the Mississippi Standard Specifications for State Aid Road and Bridges Construction, as approved by the Office of State Aid Road Construction of the Mississippi Department of Transportation (known as "the Green Book").

¶5.    The Green Book outlined the necessary duties and tasks required for the construction of State-aid projects, including duties of the State Aid County Engineer.  Among them was the duty to alert affected utility companies.  "MSS-S-105.06 - Cooperation with Utilities" states:

> The Engineer will notify all utility companies . . . and endeavor to have a plan and agreement for all necessary adjustments of utilities . . . which are within or adjacent to the limits of construction before bids are received.

¶6.    Prior to receiving any bids, on November 8, 2016, Toles sent an email to Chuck

---

[1] The formal name of the project was "The Magnolia-Progress Road Reinforced Box Culvert with Approaches Project."

3

Rushing at Magnolia Electric Power Association ("MEPA") notifying him of the project. Toles attached a copy of the project's drawings. In his email, Toles told Rushing that when the culvert previously had been replaced, there were no problems with the power lines.[2] Thus, Toles did not anticipate any conflict with the power lines in this project either. Rushing replied that he would look into whether there would be any problem with the power lines, and MEPA later acknowledged that they had received informal notice of the project through this email to Rushing. Rushing died before construction started, and Toles had no further contact with MEPA.

¶7.    The Green Book also required that the contractor follow State law concerning anticipated work near a power line and give notice to the power company. MSS-S-105.6.1 required that the contractor perform no activities within ten feet of any high voltage overhead line, stating:

> The Contractor shall comply with the State of Mississippi law concerning work within the proximity of overhead powerlines. . . . If any person desires to carry on any function . . . in closer proximity to any high voltage overhead line than permitted by this chapter, the person responsible for performing the work shall promptly notify the electric utility . . . in writing, on a form to be provided by such electric utility, and shall not perform the work until mutually satisfactory arrangements have been made between such electric utility and the person or business entity responsible for performing the work.[3]

---

[2] A culvert at this same location had previously failed to work. In this new project, a different type of culvert would be constructed.

[3] This tracks the language of Mississippi Code Annotated section 45-15-9(1) (Rev. 2015): "If any person desires to carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted by this chapter, the person responsible for performing the work shall promptly notify the electric utility operating the

4

This Green Book section also includes a form notice that the contractor was required to complete, sign, and submit with other contract documents. The form notice includes language that the contractor, in this case MAGCO, intended to bring equipment within ten feet of the high-voltage line and that it wanted to confer with MEPA about possible additional safety measures needed. MSS-S-105.6.1 further required that the County Engineer submit a copy of the signed document to each utility company that may be affected by the project.

¶8.    MAGCO signed the form notice on February 13, 2017, when it signed the contract, but it failed to provide any notice directly to MEPA. Toles later admitted that he only sent the notice form to MEPA on April 10, 2017, six days after the incident, after a post-accident meeting with MEPA. Toles felt that he had given MEPA notice of the project through his email to Rushing and that MAGCO had an independent responsibility to contact MEPA, which MEPA acknowledged. MEPA said that normally it receives notice from the company actually performing the contract because that company would know what equipment it would be using. MAGCO said it did not notify MEPA because MAGCO's plan was not to be near the power line at all.

¶9.    Toles designated two other employees of Neel Schaffer (James Fenn and Billy Amos)

---

high voltage overhead line, in writing, on a form to be provided by such electric utility, and shall not perform the work until mutually satisfactory arrangements have been made between such electric utility and the person or business entity responsible for performing the work, to deter contact with the high voltage overhead lines as provided in subsection (2) below."

as his authorized representatives to serve as inspectors on the project. Fenn completed daily reports of the work-site conditions and what was accomplished. These two representatives were authorized to interact directly with the contractor if they observed something out of compliance, but they had no authority to stop the work. Fenn had received on-the-job training from a previous engineering firm and had worked in the field for forty years (twenty years as an inspector). Fenn visited the site twice a day, once in the morning and in the afternoon around 3 p.m. He would observe the work and stay about an hour.

¶10. On April 4, 2017, MAGCO workers, including James, used a pump to remove water from the creek bottom. In the morning, they moved the water pump by hand. Later in the day, when the crew was shutting down, the pump needed to be moved to higher ground. Instead of carrying it as before, they decided to use an on-site crane.

¶11. During his morning visit, Fenn saw the crane parked on the paved road with the boom pointed downstream and up in the air over the power line. According to Fenn, the boom was "in some limbs of some trees to get to where they needed to be, which it didn't obstruct anything." Fenn had not seen the crane in this position over the power line before. He mentioned it to Amos and said that although the position was unusual, "there was no eminent danger that I could see." Amos agreed and said, "[I]f that's what they [(MAGCO)] want to do, [let them] do it." Fenn did not report any of this to Toles. When Fenn made his afternoon visit, the crane was in the same position and not in use.

¶12. After Fenn had left the site, when the water pump needed to be moved, the crew

6

unilaterally decided to use the crane. The operator maneuvered the boom so the cables would be over the pump. He then lowered the boom down because the cables were not long enough to reach the pump. When the boom was lowered, it came into contact with the power line, which electrified the boom and the cables. When James grabbed the cable, he was instantly electrocuted.

¶13. The United States Department of Labor, Occupational Safety and Health Administration ("OSHA") inspected the site on the day after the accident. OSHA cited MAGCO for the serious violations of operating the crane within twenty feet of an overhead power line without taking precautions, as well as for failing to train employees about the appropriate safe-work practices applicable.

**Procedural History**

¶14. On April 20, 2017, Shelia Gayden McGee, James's mother, representing herself and the heirs of James (collectively "McGee"), filed a wrongful death suit in the Pike County Circuit Court against MEPA and unknown defendants. On June 15, 2017, McGee amended the complaint and added Tim Hall (president of MAGCO), Neel Schaffer, and MAGCO. McGee's complaint alleged claims of strict liability, negligence, and gross negligence. The complaint further alleged that MAGCO had willfully and falsely reported that all utilities with power lines in close proximity to the construction site were properly notified at the start of construction, thereby removing MAGCO from the protection of the Mississippi Workers' Compensation Act.

¶15.    On September 28, 2017, Hall and MAGCO filed a motion to dismiss or, alternatively, motion for summary judgment.

¶16.    On December 11, 2017, Neel Schaffer filed a motion for summary judgment, arguing that McGee's claims against it were brought based on the actions of Toles and Fenn, who were acting as agents of Pike County and subject to the MTCA. As public employees acting within the course and scope of their employment, Toles and Fenn allegedly were immune under the MTCA. Neel Schaffer claimed that it was entitled to the same defenses that Toles and Fenn had.

¶17.    On July 5, 2018, McGee filed a second amended complaint, adding Pike County to the lawsuit. Thereafter, Neel Schaffer renewed its motion to dismiss/motion for summary judgment and filed a cross-claim against MAGCO.

¶18.    On January 10, 2018, the circuit court dismissed McGee's claims against MAGCO and its president, Tim Hall. The court found that although MAGCO failed to give notice to the utility company of its work near the power lines, as required in Mississippi Code Annotated section 45-15-3 (Rev. 2015), such failure amounted only to negligence, which was insufficient to defeat the exclusivity of the remedy afforded by the Mississippi Workers' Compensation Act.[4]

¶19.    The circuit court heard arguments on Neel Schaffer's motion for summary judgment on March 7, 2018. On July 27, 2018, the circuit court granted the motion, finding that Toles

---

[4] McGee has not appealed this ruling.

was acting as a county employee and immune under the MTCA and that Neel Schaffer, as his employer, was entitled to the same defense. The circuit court entered this judgment as a final judgment, stating, "[T]here being no just reason for delay, it is hereby directed that judgment be entered in favor of Defendant Neel-Schaffer with respect to plaintiff's claims." The court ordered that the claims against Neel Schaffer were dismissed with prejudice. McGee sought no reconsideration of the circuit court's judgment and filed no appeal at that time.

¶20. On December 21, 2018, McGee dismissed her claims against MEPA, and an agreed order of dismissal was entered.

¶21. On May 3, 2019, Toles individually filed a motion for summary judgment, claiming that his work on the road project was performed in his capacity as an employee of Pike County and that he was immune from suit under the MTCA. On August 1, 2019, the circuit court heard argument on Toles's motion and granted summary judgment in favor of Toles, individually, citing its finding in the July 27, 2018 order that Toles was a county employee entitled to immunity under the MTCA. The circuit court found that Toles would remain in the action in his representative capacity as an employee of Pike County. The circuit court's judgment again stated, "[T]here being no just reason for delay, it is hereby directed that judgment be entered in favor of Defendant Toles in his individual capacity." The judgment dismissed Toles, individually, with prejudice. McGee did not seek reconsideration from the circuit court, nor did she appeal the court's decision at that time.

9

¶22. On June 18, 2020, McGee filed a motion to reconsider, *see* M.R.C.P. 59, seeking the court's review of its order of July 27, 2018 (granting Neel Schaffer's motion for summary judgment), and its order of August 1, 2019 (granting Toles's motion for summary judgment). The circuit court heard arguments on the motion to reconsider on September 8, 2020, and issued its ruling on September 21, 2020. The circuit court stated that it considered McGee's motion under Mississippi Rule of Civil Procedure 60, instead of under Rule 59, because the motion was not filed within ten days of each challenged order. M.R.C.P. 59(b). The circuit court still found the motion untimely under Rule 60 because it was filed more than one year after the judgments had been rendered. *See* M.R.C.P. 60(b). The court further found that the motion lacked merit under Rule 60.

¶23. On August 18, 2020, Pike County and Chad Toles, in his official capacity, filed their motion for summary judgment. Both the motion and McGee's response had numerous exhibits attached, including but not limited to the Green Book regulations, the accident report, the medical examiner's report, the sheriff's office's investigative report, seven deposition excerpts of the parties, expert reports, and OSHA's citations of MAGCO.

¶24. The circuit court heard arguments on Pike County and Toles's motion on October 12, 2020, and on October 28, 2020, the circuit court granted the motion. It found that Pike County and Toles were entitled to immunity under Mississippi Code Annotated section 11-46-9(1)(v), which grants immunity when an open and obviously dangerous condition is not created by a county employee and of which the county did not have actual or constructive

10

notice. The circuit court held that the dangerous condition in this case, the high-voltage power line, was open and obvious, that the construction crew deviated from the construction plan in operating the crane near the power line, and that the crew, exercising ordinary care, should have appreciated the danger.

¶25. On November 17, 2020, McGee appealed from the circuit court's July 27, 2018 order granting Neel Schaffer's motion for summary judgment, the August 1, 2019 order granting Toles's motion for summary judgment, and the October 28, 2020 order granting Pike County and Tole's motion for summary judgment. The notice of appeal did not include an appeal of the circuit court's September 21, 2020 denial of McGee's motion to reconsider.

¶26. On November 24, 2020, Neel Schaffer and Toles, individually, filed a joint motion in the Mississippi Supreme Court to dismiss McGee's appeal, arguing that the notice of appeal was not timely filed.

¶27. On November 25, 2020, the circuit court entered a final judgment pursuant to its order dismissing McGee's claims against Pike County and Toles, in his official capacity. On December 4, 2020, McGee filed an amended notice of appeal, again appealing only from the October 28, 2020 grant of summary judgment in favor of Pike County and Toles and the July 27, 2018 and August 1, 2019 orders granting summary judgment in favor of Neel Schaffer and Toles, respectively. On December 8, 2020, Neel Schaffer and Toles filed a second joint motion to dismiss the appeal as untimely.

¶28. Then on December 9, 2020, Neel Schaffer and Toles, individually, filed separate

11

motions to dismiss the amended appeal. McGee responded that (1) final judgment was not entered until November 25, 2020, (2) the circuit court failed to articulate any reasons for including Rule 54(b) certification language in the orders appealed from, and (3) the certification of those orders was improper because it would have resulted in piecemeal litigation and multiple appeals on the same issue. McGee raises these same issues in her appeal as well as her substantive challenges to the summary judgments in favor of all defendants.

¶29.    On December 18, 2020, the supreme court entered an order passing the four motions to dismiss the appeal to this Court for consideration with the merits of the appeal.

**Discussion**

**I.      Whether McGee's appeal of the circuit court's grants of summary judgment in favor of Neel Schaffer and Toles, individually, should be dismissed as untimely.**

¶30.    Before considering the issues McGee raises in her appeal, we must first determine the merits of the motions that have been filed by Neel Schaffer and Toles, individually, to dismiss the appeal of her claims against them as untimely. The final judgment with prejudice in favor of Neel Schaffer was entered on July 27, 2018, and the final judgment with prejudice in favor of Toles, individually, was entered on August 1, 2019. Both judgments included language that there was no just reason for delay, and the court directed the final judgments against these parties be entered, ostensibly making the judgments immediately appealable. *See* M.R.C.P. 54(b).

12

¶31.     Rule 54(b) of the Mississippi Rules of Civil Procedure provides for the entry of final judgments from which an appeal lies in instances of judgments entered during litigation with multiple claims or against multiple parties:

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.

In the absence of such a determination, a judgment that adjudicates fewer than all the claims against a party or determines the rights or liabilities of fewer than all the parties may not be immediately appealed.  *See id.;* Miss. Code Ann. § 11-51-3 (Rev. 2019).

¶32.     A party appealing from a Rule 54(b) judgment must comply with Rule 4(a) of the Mississippi Rules of Appellate Procedure, which provides in part:

> In a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.

Additionally, Mississippi Rule of Appellate Procedure 2(a) requires the mandatory dismissal of an appeal if the notice was not timely filed pursuant to Rule 4.  "Rule 2(a) reflects the long-standing rule in this state that the failure to file a timely appeal leaves this Court without jurisdiction to consider the case."  *Pope v. Brock*, 179 So. 3d 1120, 1126-27 (¶27) (Miss. 2015) (citing *Bank of Edwards v. Cassity Auto Sales Inc.*, 599 So. 2d 579, 581-82 (Miss. 1992)).  "Rule 2 is strictly enforced."  *Id*. (citing *Tandy Elect. Inc. v. Fletcher*, 554 So. 2d

13

308, 310 (Miss. 1989) ("[A]ppeals not perfected within thirty days will be dismissed, period.")). We too have held that the "failure to timely appeal leaves the supreme court and this court without jurisdiction to consider the issue." *Coombs v. Jason Pilger Hyundai of Gautier*, 285 So. 3d 730, 737 (¶18) (Miss. Ct. App. 2019) (addressing failure to timely appeal order compelling arbitration). However, "a motion to reconsider filed within ten days of the entry of the judgment falls under Rule 59 and tolls the thirty-day time period to file a notice of appeal until the disposition of the motion." *Davis v. Vance*, 138 So. 3d 961, 964 (¶11) (Miss. Ct. App. 2014).

¶33. Judgments appealable under Rule 54(b) must contain language that there was no just reason for delay and that the trial court has expressly directed the entry of judgment. *Anderson v. Britton & Koontz Bank N.A.*, 55 So. 3d 1130, 1132 (¶7) (Miss. Ct. App. 2011). This language is considered to be "certification" of the order by the trial court, authorizing the appeal. *Id*. No appeal may be taken if the trial court does not certify the decision as a final judgment. *Id*. For example, in *Meekins v. Kennon*, 141 So. 3d 51, 53 (¶14) (Miss. Ct. App. 2014), we dismissed an appeal because, among other things, "the summary judgment" order did not include an express determination that there was no just reason for delay, and the circuit court failed to certify the order as a final judgment under Rule 54(b). Granted, a trial court is not required to set forth specific reasons and findings for its ruling that there is no reason for delay when such reasons can be determined from the record. *Cox v. Howard, Weil, Labouisse, Frederichs Inc.*, 512 So. 2d 897, 901 (Miss. 1987). But even in the case

McGee cites for support, *Rebuild America Inc. v. Countrywide Homes Loans Inc*., 88 So. 3d 794 (Miss. Ct. App. 2012), where Rebuild appealed a summary judgment ruling, we required certification language from the chancellor to appeal. *Id*. at 797-98 (¶¶10, 15).

¶34. Although we have the discretion to review the appropriateness of a Rule 54(b) judgment for plain error, as explained in *Reeves Construction & Supply Inc. v. Corrigan*, 24 So. 3d 1077, 1082 (¶13) (Miss. Ct. App. 2010),[5] the appeal still must be timely filed. "[A] Rule 54(b) certification, right or wrong, starts the time for appeal running." *In re Conservatorship of Redd*, 332 So. 3d 250, 256 (¶18) (Miss. 2021) (quoting *Rolison v. Fryar*, 204 So. 3d 725, 734 (¶19) (Miss. 2016)). "Thus, once a trial court has directed the entry of a final judgment under Rule 54(b), any party seeking relief from that judgment, even on the ground that the judgment is, in fact, interlocutory, must perfect an appeal within thirty days after the entry of judgment." *Id*.

¶35. In the alternative, a party can file a motion to reconsider the final judgment within ten days, which would stay the thirty days to appeal under Rule 59. *Brand v. Barr*, 980 So. 2d 962, 965 (¶9) (Miss. Ct. App. 2008) ("The time for appeal begins to run only after the entry

---

[5] In that case, Reeves appealed a summary judgment ruling against him and in Corrigan's favor on two of Corrigan's three causes of action. *Id*. at 1081 (¶8). The judgment did include the requisite Rule 54(b) language. *Id*. at 1082 (¶12). Reeves appealed, yet we declined to consider the merits of his arguments on appeal because, in examining the judgment, we found that the remaining issue to be tried was intertwined with the claims on which summary judgment had been granted. *Id*. at 1083 (¶19). Accordingly, we found the Rule 54(b) judgment was improvidently entered as such. *Id*. We note that the appellate record in this case, of which we take judicial notice, shows that Reeves timely appealed from the Rule 54(b) judgment, which gave us the jurisdiction to review it.

of the order disposing of the last post-trial motion, if the motion is filed no later than 10 days after the entry of the judgment."). "But a motion to reconsider filed more than ten days after the entry of the judgment falls under Rule 60(b). And a Rule 60(b) motion does not toll the thirty-day time period to file a notice of appeal." *Davis*, 138 So. 3d at 964 (¶11); *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶8) (Miss. Ct. App. 2013).

¶36. In the case at hand, the two final judgments in favor of Neel Schaffer and Toles, individually, contained the requisite language to certify them as final, appealable judgments under Rule 54(b). Both judgments indicated that there was no just reason for any delay, and the court directed entry of judgments in favor of Neel Schaffer and Toles, individually, on the merits of the claims McGee had pleaded against them. The titles of both court-issued documents included the words "final judgment," and both were entered on the circuit court docket as such. McGee makes no claim that she was unaware of the entry of these judgments; the judgment in favor of Toles was even approved as to form by McGee's attorney. Accordingly, the judgments were final under Rule 54(b).

¶37. When the final judgments were entered on July 27, 2018, and August 1, 2019, respectively, McGee had thirty days to file her notice of appeal or ten days to file her motion to reconsider. McGee did neither. She filed her notice of appeal from these judgments on November 17, 2020, and she had not filed a motion with the circuit court to reconsider them until June 18, 2020. McGee's motion to reconsider, having been filed more than ten days after the final judgments, was correctly considered as a Rule 60 motion for relief of

16

judgment, which did not stay the thirty-day deadline for filing an appeal. Accordingly, we find McGee's appeal of the final judgments rendered in favor of Neel Schaffer and Toles, individually, was untimely.[6] Because of the untimeliness of the appeal, we have no jurisdiction to consider the merits of McGee's appeal of those decisions.[7]

## II. Whether the circuit court erred in dismissing McGee's claims against Pike County and Toles in his representative capacity.

¶38. McGee sued Pike County and Toles for negligence, pleading that they knew or should have known that the power line created a hazard to James. The circuit court granted summary judgment in favor of Pike County and Toles on McGee's claims, applying Mississippi Code Annotated section 11-46-9(1)(v), which provides that a governmental entity is not responsible for an injury caused by a dangerous condition on its property that was not created by an employee. The circuit court held that the dangerous condition in this case was not caused by Pike County or Toles. Additionally, the circuit court held that the danger was open and obvious to James, relieving Pike County and Toles of any responsibility.

¶39. "Entry of summary judgment is appropriate when there exists no genuine issue of material fact that can be found and the moving party is entitled to judgment as a matter of

---

[6] The motion to dismiss McGee's original notice of appeal and the two motions to dismiss McGee's amended notice of appeal are granted. Motion #2020-3929 seeking the same relief is dismissed as moot.

[7] McGee also asks us to relieve her of these final judgments under Rule 60 of the Mississippi Rules of Civil Procedure. However, we are a court of review, not one with original jurisdiction, and we operate under the Rules of Appellate Procedure. We have no authority to grant McGee any relief under Mississippi Rule of Civil Procedure 60.

17

law." *Martin v. Flanagan*, 818 So. 2d 1124, 1126 (¶7) (Miss. 2002).

> The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.

*Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903, 906-07 (¶3) (Miss. Ct. App. 2001).

¶40.    The burden of showing that no genuine issue of material fact exists lies with the moving party, *id*. at 906 (¶3), and we are to view the evidence in the light most favorable to the party against whom the motion for summary judgment has been made. *Hyde v. Martin*, 264 So. 3d 730, 734 (¶14) (Miss. 2019). However, the nonmoving party's claim must be supported by more than a mere scintilla of colorable evidence. *Est. of Hynes ex rel. McKnight v. Ambling Mgmt. Co.*, 66 So. 3d 712, 715 (¶10) (Miss. Ct. App. 2011). "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Webb v. Braswell*, 930 So. 2d 387, 395 (¶12) (Miss. 2006).

¶41.    McGee's claims against Pike County are governed by the MTCA. Under the MTCA, State entities and political subdivisions have immunity from suits arising out of their torts or torts of their employees acting within the course and scope of their employment. *Campbell v. Harrison Cnty. Bd. of Supervisors*, 269 So. 3d 1269, 1273 (¶14) (Miss. Ct. App. 2018). Such government entities are not liable in certain contexts and circumstances, including instances of injury due to an open and obvious condition on their property. *Id.* Such

immunity is found in Mississippi Code Annotated section 11-46-9(1)(v), which states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> > (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care;

Thus, to prevail when an MTCA entity raises the dangerous-condition exemption, a plaintiff must show "1. [a]n injury was suffered; 2. [t]he injury was caused by a dangerous condition on the property caused by the negligent or other wrongful conduct of the government employee; 3. [t]he governmental entity had either actual or constructive notice of the defect; 4. [t]he governmental entity had an adequate opportunity to protect or warn of this defect; and 5. [t]he condition was not open and obvious to one exercising due care." *Long v. Jones Cnty. ex rel. Bd. of Supervisors*, 301 So. 3d 62, 67 (¶17) (Miss. Ct. App. 2020); *accord Bryant v. Bd. of Supervisors of Rankin Cnty.*, 10 So. 3d 919, 921 (¶5) (Miss. Ct. App. 2008).[8]

¶42.    Just how open and obvious a dangerous condition may be is usually a question for the

---

[8] In *Bryant*, we identified the elements of proof needed as: "(1) a dangerous condition, (2) on the government entity's property, (3) which the government entity caused, or of which it had notice, either actual or constructive, and time to protect or warn against, and (4) that the condition was not open and obvious." *Bryant*, 10 So. 3d at 921 (¶5).

trier of fact, but there have been cases of such clearly dangerous conditions that the question was decided as a matter of law. *Campbell*, 269 So. 3d at 1274 (¶17); *Bell v. Bay St. Louis*, 467 So. 2d 657, 664 (Miss. 1985). In *Campbell*, we noted several cases where the danger was found to be clearly open and obvious, including a snow-covered parking lot; a one-and-a-half-inch unevenness in a sidewalk; and uneven pavement jutting up two inches over a step. *Campbell*, 269 So. 3d at 1274 (¶17). We held that a county's drainage ditch on the beach was also open and obvious as a matter of law. *Id.* at (¶16); *see also LeSuer v. United States*, 617 F. 2d 1197, 1197-98 (5th Cir. 1980) (finding an injury that occurred when a crane came into contact with high-voltage wires while unloading scrap metal resulted from a dangerous condition).

¶43. When a dangerous condition is determined to be open and obvious, we have held that the "open and obvious danger" defense only bars a claim for a failure to warn. *City of Natchez v. Jackson*, 941 So. 2d 865, 876 (¶33) (Miss. Ct. App. 2006) (explaining that a governmental entity shall not be held liable for the failure to warn of an "open and obvious" condition). The fact that a dangerous condition is obvious "only exempts the governmental entity from liability for the failure to warn of the condition. It is not a bar to recovery when the issue is the government's negligent maintenance or repair which led to the dangerous condition." *Campbell*, 269 So. 3d at 1274 (¶15) (citation and quotation marks omitted). A party may still have a viable claim if the dangerous condition existed or was not corrected because the governmental entity failed to maintain the premises in a reasonably safe

20

condition. *Id*. at (¶18).

¶44. In this case, the parties do not dispute that there was a dangerous condition at the site and time of the accident.[9] Additionally, McGee does not contest that the danger was open and obvious. Thus under the precedent cited above, Pike County was entitled to immunity from the failure-to-warn claim. Accordingly, we affirm the circuit court's holding that Pike County and Toles were immune from suit for failure to warn.

¶45. McGee claims that she still had a viable claim for negligence because she contends the danger was open and obvious to Toles and Fenn during their visits to the site, and they negligently failed to correct it. "A claim of negligence has four elements: duty, breach, causation, and damages." *Schepens v. City of Long Beach*, 924 So. 2d 620, 623 (¶9) (Miss. Ct. App. 2006). Under section 11-46-9(1)(v), Pike County and Toles are immune from suit unless the dangerous condition itself was caused by Toles's negligence. Thus, to preclude summary judgment, McGee was required to present evidence that Pike County and/or Toles had a duty, that the duty was breached, and that the breach caused the dangerous condition that in turn caused James's death. Our review of the record shows that the circuit court was correct in finding that McGee failed to prove any breach of duty by Toles that caused the dangerous condition.

¶46. First, the proof showed that Toles had visited the site only once and saw the crane on

---

[9] McGee described the dangerous condition as "unprotected high voltage overhead power lines in the proximity of crane operation on this construction site."

21

site that one time. His visit was not on the day of the accident, and there was no proof that the crane was in the same position when Toles saw it as it was at the time of the accident. Toles testified that in prior similar culvert work, the location of the power lines did not present any risk. The president of MAGCO testified that the manner in which the crew used the crane to move the water pump was not in the construction plan, and the crane was never intended to be used within ten feet of the power line. Although Fenn did observe the crane over the power line prior to the accident, it was positioned with the boom in the trees and presented no imminent danger. The proof clearly showed that it was the work crew that decided at the last minute to use the crane and moved it to do so without notice to Toles or Fenn, who was not on-site at the time.

¶47. Without any prior notice, and certainly without any time to correct the increased risk of injury, it cannot be said that Toles or Pike County caused the dangerous condition that the crew's movement and use of the crane created or that Toles or Pike County failed in any way to prevent. We have held that when a dangerous condition exists that was "'created by someone not associated with the business, the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it.'" *Dickinson v. Vanderburg*, 141 So. 3d 455, 457 (¶4) (Miss. Ct. App. 2014) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (¶12) (Miss. 2013)). Constructive knowledge of a dangerous condition "is generally a function of how long the condition has existed." *Vu v. Clayton*, 765 So. 2d 1253, 1255 (¶10) (Miss.

22

2000). In this case, neither Fenn nor Toles was aware of the MAGCO crew's last-minute decision to move and use the crane, and certainly neither person had any opportunity to intervene. Therefore, the circuit court was correct in finding that neither had created or failed to correct the dangerous condition that caused James's death. There being no proof of negligence by Toles or Fenn causing the dangerous condition, we affirm the circuit court's finding that they and Pike County were immune under section 11-46-9(1)(v).

¶48. McGee argues at length Toles's failure to notify MEPA at the beginning of the construction project as required by the Green Book. However, even if Toles had done so, MAGCO's crew acted in deviation of the specifications of the project when it used the crane within ten feet of the power line. Notice to MEPA at the beginning of the project would not have prevented MAGCO's crew from deliberately deviating from its own construction plan on the day of the accident, as MAGCO's president testified they did. Any breach of notification duty did not cause the dangerous condition that caused James's death.[10]

¶49. Because McGee failed to present proof of a breached duty that caused the dangerous condition, McGee failed to prove the negligence required to defeat the immunity provided in section 11-46-9(1)(v). Accordingly, we hold that the circuit court did not err in granting summary judgment in favor of Pike County and Toles, in his representative capacity.

---

[10] Pike County and Toles also argue that James's own negligence caused his injuries. However, the circuit court made no ruling on that matter for us to review. Moreover, it is not necessary for us to address that argument to reach our holding because McGee's negligence claim fails: no breach of duty by Toles or anyone from Pike County caused the dangerous condition.

**Conclusion**

¶50.    Because McGee failed to timely appeal from the final judgments rendered in favor of Neel Schaffer and Toles, individually, her appeal from those judgments is dismissed. Further, because there was no genuine issue of material fact in dispute that the dangerous condition that caused James's death was not created by the negligence of Toles, as the County Engineer, or Pike County, we affirm the circuit court's summary judgment in favor of both defendants on the basis of immunity.

¶51.    **AFFIRMED IN PART; APPEAL DISMISSED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**